The STATE of Ohio, Appellee,

v.

GORDON, Appellant. ▮

[Cite as *State v. Gordon,* 149 Ohio App.3d 237, 2002-Ohio-2761.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–010593 and C–010594.

Decided June 7, 2002.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Rebecca L. Collins, Assistant Prosecuting Attorney, for appellee.

Jonathon P. Dameron, for appellant.

Mark P. Painter, Presiding Judge.

{¶ 1} Defendant-appellant William Gordon was arrested and indicted for burglary[1] and receiving stolen property.[2] The indictment alleged that Gordon had broken into a residence and had fled in a car that had been stolen earlier the same day.

{¶ 2} Over the next seven months, as Gordon remained incarcerated awaiting trial, the trial court granted eight continuances. Some of the continuances were at Gordon's request, and some were requested by the state. But they were primarily related to an attempt to consolidate a forthcoming indictment for a different burglary that was alleged to have occurred the same day. Gordon was also being held at the request of the Department of Corrections for alleged parole violations and in connection with unrelated burglary charges in another county.

{¶ 3} Gordon's trial counsel did not exude confidence on the day that the consolidated indictments were finally set for trial. He initially told the trial court that "we are as ready [for trial] as we're going to get." But after Gordon rejected a plea bargain that his attorney and the prosecutor had discussed, the attorney explained that he did not want to "mislead" the court, since he was "prepared to go forward on both cases if we had to," but that he had "a lot of problems" with trying the consolidated cases. The court agreed to separate the cases for trial, but emphatically reiterated that at least one of the cases would commence that day. Gordon was then given an additional opportunity to consider the negotiated plea bargain.

{¶ 4} After further discussion with his lawyer, Gordon moved the trial court to appoint new counsel. He explained that he was dissatisfied with his lawyer for two reasons. First, he said that the plea bargain actually presented was significantly harsher than that which his lawyer had told him could be negotiated. Second, he claimed that in the seven months that he had been awaiting trial, he had seen his lawyer for a total of only four hours and that at no time did they have any discussions about trial strategy. Gordon's attorney protested that he "usually bur[ied] clients in time and attention," but did not dispute that he had never discussed trial strategy with his client.

{¶ 5} The trial court confirmed with Gordon's lawyer that he had not failed to subpoena any potential witnesses and then overruled Gordon's request for a new attorney. Two further private discussions between Gordon and his lawyer

---

1. R.C. 2911.12(A)(2).

2. R.C. 2913.51(A).

ensued, after which Gordon's attorney proclaimed that Gordon had decided to accept the plea bargain.

{¶ 6} Before accepting Gordon's plea, the trial court began the requisite colloquy[3] to determine whether it was being offered knowingly, intelligently and voluntarily. But when the court asked Gordon if his plea was voluntary, Gordon replied that it was offered "voluntarily, under duress." He further explained that he felt that "his hands [were] really tied if I'm forced to go to trial with him * * * as my attorney."

{¶ 7} The trial court again asked Gordon if he preferred to try his case, and Gordon replied, "Not with [him] * * * as my attorney." The court then explained that it had already overruled his motion for a new attorney and that his only choice was to go to trial with his present counsel or to plead guilty. Gordon pleaded guilty, but in further discussion with the court he reiterated that "I do not want to go forward with [him] * * * as my attorney, that's for sure."

{¶ 8} The proceedings continued with a recitation of the facts and other matters, at the conclusion of which the trial court stated, "[F]inal chance, sir. Do you want to go forward with the trial today or not?" Gordon replied, "[N]ot with [him] * * * as my attorney." The court then accepted Gordon's guilty plea.

{¶ 9} Gordon now raises two assignments of error. First, he argues that the trial court abused its discretion[4] by denying his motion to appoint new counsel. Because the record reflects that there had not been a complete breakdown in communication between Gordon and his attorney, we overrule Gordon's first assignment of error.

{¶ 10} Second, Gordon maintains that the court erred by accepting a guilty plea that was not offered voluntarily. We hold that Gordon's plea was not voluntary and thus sustain his second assignment of error.

{¶ 11} We begin our analysis of Gordon's first assignment of error by noting that Gordon was an indigent defendant with an appointed attorney. He was not entitled to choose his own lawyer at taxpayer expense, but rather was entitled to competent, effective representation from the lawyer appointed by the court.[5]

---

3. See Crim.R. 11(C)(2)(a) through (c).

4. See *State v. Murphy* (2001), 91 Ohio St.3d 516, 523, 747 N.E.2d 765, quoting *State v. Cowans* (1999), 87 Ohio St.3d 68, 73, 717 N.E.2d 298, citing *United States v. Iles* (C.A.6, 1990), 906 F.2d 1122, 1130, fn. 8.

5. See *State v. Murphy* (2001), 91 Ohio St.3d 516, 523, 747 N.E.2d 765, quoting *United States v. Iles* (C.A.6, 1990), 906 F.2d 1122, 1130, quoted in *State v. Cowans* (1999), 87 Ohio St.3d 68,

{¶ 12}   Competent representation does not include the right to develop and share a "meaningful attorney-client relationship" with one's attorney.[6]  Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel.[7]

{¶ 13}   Generally, to justify the appointment of new counsel, Gordon would have been required to demonstrate that his relationship with his attorney had deteriorated so badly "as to jeopardize [his] right to effective assistance of counsel."[8]  Specifically, he might have shown "good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict * * * lead[ing] to an apparently unjust result."[9]

{¶ 14}   Gordon argues that his attorney's failure to discuss trial strategy with him in the months preceding his court appearance was an example of a complete breakdown in communication that would have jeopardized his right to effective assistance of counsel.  It is true that an attorney is required to consult with a client on important trial decisions.[10]  But the record does not reflect a total breakdown in communication that would have jeopardized Gordon's right to effective assistance of counsel.  Gordon and his attorney met for several hours over the months that Gordon was awaiting trial.  The trial court gave them an opportunity to continue to communicate privately when it became apparent that the plea offered by the state was not what Gordon had had in mind.  After that exchange, neither Gordon nor his attorney moved the court for a continuance to further discuss trial strategy.

{¶ 15}   In addition, there was no specific allegation that Gordon's counsel's failure to discuss trial strategy resulted in Gordon's inability to present an alibi

---

72, 717 N.E.2d 298; *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92, 93, 32 O.O.2d 63, 209 N.E.2d 204.

6.  *Morris v. Slappy* (1983), 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610, cited by *State v. Murphy* (2001), 91 Ohio St.3d at 523, 747 N.E.2d at 781;  *State v. Harrison* (Jan. 17, 2001), 9th Dist. No. 20080, 2001 WL 39600.

7.  See *State v. Henness* (1997), 79 Ohio St.3d 53, 65–66, 679 N.E.2d 686.

8.  *State v. Coleman* (1988), 37 Ohio St.3d 286, 292, 525 N.E.2d 792, quoting *People v. Robles* (1970), 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710.

9.  *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559, citing *State v. Pruitt* (1984), 18 Ohio App.3d 50, 57, 18 OBR 163, 480 N.E.2d 499.  See, also, *State v. Edsall* (1996), 113 Ohio App.3d 337, 339, 680 N.E.2d 1256.

10.  See *State v. Smith* (1985), 17 Ohio St.3d 98, 101, 17 OBR 219, 477 N.E.2d 1128, fn. 1.

defense or to subpoena witnesses.[11] And from counsel's many appearances before the trial court as the parties waited for Gordon's cases to be consolidated, the court could reasonably have concluded that Gordon was receiving adequate representation. Under these circumstances, a general allegation that appointed counsel had not discussed trial strategy was insufficient to require the trial court to appoint a new attorney.[12] We thus overrule Gordon's first assignment of error.

{¶ 16} But a guilty plea must be made voluntarily. If it is not, enforcement of the plea is unconstitutional under both the United States Constitution and the Ohio Constitution.[13] Gordon's plea was not voluntary—he said so repeatedly. Despite the trial court's best effort to elicit a guilty plea untainted by Gordon's dissatisfaction with his attorney's efforts, Gordon told the court no less than five times that he was pleading guilty only because he believed that to be his only alternative.

{¶ 17} A plea is voluntary if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."[14] Gordon believed, whether correctly or incorrectly, that a trial was no longer an alternative. Thus his plea did not represent a free choice from all of the available alternatives. Under these circumstances, the court should not have accepted Gordon's conditional guilty plea.

{¶ 18} Finally, a defendant who challenges his guilty plea on the basis that it was not voluntary must show that he would not otherwise have so pleaded.[15] The record clearly demonstrates that Gordon would not have pleaded guilty at that time were it not for his lack of faith in his attorney. Since the trial court had already ruled that Gordon's attorney was capable of adequately representing him, the court should have rejected Gordon's involuntary plea and commenced his trial—or, in an abundance of caution, appointed new counsel.

{¶ 19} We thus sustain Gordon's second assignment of error, reverse the trial court's judgment, and remand this case for further proceedings in accordance with law. We do not know whether Gordon will fare better at a trial than under

---

11. See *State v. Deal* (1969), 17 Ohio St.2d 17, 46 O.O.2d 154, 244 N.E.2d 742, syllabus.

12. See *State v. Smelcer* (Dec. 17, 1998), 8th Dist. No. 74948, 1998 WL 895247.

13. *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450.

14. See *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162.

15. See *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 364 N.E.2d 1163; Crim.R. 52(A).

the terms of the plea bargain he has successfully appealed, but he must perceive that a trial is an option before his guilty plea may be accepted.

Judgment reversed
and cause remanded.

HILDEBRANDT and SUNDERMANN, JJ., concur.