DECISION AND JUDGMENT ENTRY
{¶ 1} Courtney Newland appeals the Ross County Common Pleas Court's judgment convicting him of misuse of credit cards, in violation of R.C. 2913.21, and taking the identity of another, in violation of R.C. 2913.49. He also appeals the trial court's order to pay restitution. Appellant asserts that the trial court erred by (1) denying his request to substitute counsel, (2) refusing to accept his guilty plea, and (3) ordering appellant to pay restitution without specifying an amount. Appellant further asserts that he was denied his constitutional right to effective assistance of counsel. Because the record does not reveal that appellant and trial counsel had a complete breakdown of the attorney-client relationship, but instead reveals that appellant was unhappy with the state's plea offer, we conclude that the trial court did not abuse its discretion by denying appellant's request for substitute counsel. We further conclude that the trial court did not abuse its discretion by refusing to accept appellant's guilty plea. The record shows that appellant, after stating that he wished to plead guilty, changed his mind and opted to have the charges tried to the jury. Additionally, we conclude that appellant has not demonstrated that trial counsel was ineffective. Therefore, we overrule appellant's first, second, and fourth assignments of error. However, because the trial court failed to specify an amount of restitution, as R.C. 2929.18(A)(1) requires, we sustain appellant's third assignment of error and reverse and remand that part of the trial court's judgment.
 {¶ 2} Appellant used an Ohio Identification card that contained his picture, but his brother's name and other identifying information, to obtain credit and to purchase items at the Sears and Elder-Beerman department stores in Chillicothe, Ohio. The stores monitored the transactions on closed circuit television and recorded them on videotape. Appellant subsequently was arrested and apparently remained in jail until February 27, 2002.[1] On March 8, 2002, the Ross County Grand Jury returned an indictment charging appellant with misuse of credit cards and taking the identity of another.
 {¶ 3} On May 6 and 7, 2002, the trial court held a jury trial. Immediately before his trial began, appellant asked the trial court to appoint a new attorney. Appellant submitted a letter to the judge, in which he stated: "Mr. Corzine, I'm not understanding these proceedings. Please, I need five minutes to explain what it is I have an issue with. I'm not happy. I need a new attorney. He will not listen to me. Please hear me out." The following colloquy then ensued: "[APPELLANT]: Sir, from the very — I think I was — not the first arraignment back in September or October, our first trial was back in December I had brought up some issues with you, Mr. Corzine, about my situation with Mr. McCleese and about being misrepresented. Now, when I first got out in February, I actually thought this was over until I did receive a re-indictment which was March — I'm sorry, sir, well I never did receive it, but I know it was out there. My parole officer called me. It was March 8, I believe. From that point on, I have been working or whatever, started trying to get a job to get my own attorney. That's what I've been trying to do. I actually had a private attorney that's out of town, that's out of town. His name is Cooper — Mr. Cooper from Columbus, Ohio.
I have issues with the charges and the dollar amount of the charges. I've sat down with Mr. McCleese while in jail on a few occasions and painstak[i]nly went through these numbers with him and they don't add up. I have the numbers. I have a calculator. I just went through them again and they're not reflecting what I've been charged with. THE COURT: Well, Mr. McCleese indicated that to the Court and talked to the prosecutor. The prosecutor offered to reduce the charge a degree to reflect that. Mr. McCleese has indicated to the Court that you were unhappy with the amount of time that was being discussed. The state still stands ready to reduce that on a plea. You'd be pleading to two felony fives. [APPELLANT]: The only thing I had a — a problem with that, Mr. Corzine, is that that's what they are. You see, they charged me — that's what they are. The numbers, once somebody takes the time out — * * * — to seriously go through like I did, they will understand that's what they are period. * * * Misuse of a credit card is a felony four because it's over five thousand dollars. THE COURT: Right. [APPELLANT]: It's not over five thousand. That's what I'm trying to explain. THE COURT: Well, I understand Listen, Mr. Newland. * * * The state has offered to reduce the charge, so it's under five thousand dollars. It'd be a felony five. Mr. McCleese indicated that you weren't willing to accept a plea to that. That's fine. That's your business. You didn't like the numbers that were being discussed. By that, I mean the possible sentences. [APPELLANT]: Yes, sir. THE COURT: That's fine. The state still stands willing to reduce that to a felony five. [APPELLANT]: Yes, sir. The only — THE COURT: It's a matter besides it's a matter of proof any way. I don't see how you're unhappy. The state's going to have to prove it beyond a reasonable doubt if they want to convict you. If the numbers aren't there, the numbers aren't there. If they're there and the jury believes them, so be it. [APPELLANT]: — But again, that's what I meant — that's what I meant by I don't understand the proceeding. I have from the time that I've been charged, Mr. Corzine — Judge Corzine. Like I told you that last time when I sat in you all's county jail for five months, five and a half months, I only talked to Mr. McCleese twice * * * in that time frame trying to get this situation out. Since I've been home, we have no defense — I've not spoken to Mr. McCleese about a defense about how we're going to go about it. There's no-the defense has no witnesses and we've not — he's not come to me once and sat down and said, okay, Courtney, these are your options. This is what I think we should do. We have not had this opportunity. THE COURT: Mr. McCleese, I understand that you extended the state's offer to Mr. Newland, did you not? MR. MCCLEESE: On more than one occasion, your honor. [APPELLANT]: That was today, Mr. Corzine. I'm talking about before all this happened before we even came to this point. THE COURT: Well, what witnesses do you have that [APPELLANT]: None. He's not — THE COURT: — No, what witnesses do you have that are to be called? I mean, I've sat through Ms. Barnes' [appellant's co-defendant] trial and I've seen [APPELLANT]: Yes, sir. THE COURT: — the videotape. [APPELLANT]: Right. THE COURT: What witnesses do you have and what will they testify to. [APPELLANT]: Well, it's not so much as what witnesses do I have and what will they testify to. It's about just this case itself, Mr. Corzine. I don't even know what's going on. I have no idea what's going on and the — THE COURT: Well, obviously, you do know what's going on, Mr. Newland. [APPELLANT]: — You know, what — just being with my paper, but as far as with the state offering me, Judge Corzine, the only reason that I didn't think that was a deal, because again, that's what it is. Them [sic] are the charges. If I was charged today, if I went out committed a crime and they charged me with an F-5 and two months later they came and said, okay, this is the deal and they offered me the maximum of F-5, that's not a deal. THE COURT: Well, the state's not required to offer you what you want. [APPELLANT]: No, sir. I understand. THE COURT: Do you understand that? [APPELLANT]: Yes, sir. THE COURT: It sounds to me like you want a trial and you want the state to prove your guilt beyond a reasonable doubt and that's what we're going to have. I haven't heard any reason — [APPELLANT]: The only — THE COURT: — to take Mr. McCleese off. [APPELLANT]: — you don't have — I mean, how — THE COURT: No, sir. [APPELLANT]: — He's not representing me, Mr. Corzine. There's nothing I can do right now. I would go to trial THE COURT: Well, you just told me you — it's not a matter of witnesses. You've just told me you don't have any. [APPELLANT]: But I'm saying, he's the lawyer. * * * THE COURT: I just don't — I just don't think you want to go to trial. [APPELLANT]: I do want to go to trial, Mr. Corzine. But he's not — THE COURT: No. [APPELLANT]: — if he's not going to represent me, what is there to go with — THE COURT: Well, you haven't told me anything other than the fact that you don't think he's visited you enough, you haven't told me the first thing. [APPELLANT]: — As far as what? Why he shouldn't represent me at trial? THE COURT: Right. [APPELLANT]: Because he's not came [sic] to me and said what we going [sic] to do. I don't know what we're doing. We're going to go upstairs and begin trial. I don't know what's going to happen. I don't know who he's going to call. I don't know nothing. [sic] I've never even seen a witness list for them, for me. I don't know what we're going to do when he stands up and starts questioning the people like with the jury. He did not ask me not one time about nothing. [sic] THE COURT: Okay. [APPELLANT]: I don't know nothing. THE COURT: Well, I haven't heard anything, Mr. Newland, that makes me think this is anything other than an attempt [APPELLANT]: So I can't hire a lawyer? I cannot hire any attorney? THE COURT: We're in the middle of a trial. You should have — [APPELLANT]: I asked you the last time, sir, and you wouldn't let me. THE COURT: — and you didn't have enough then."
 {¶ 4} As the court attempted to start the jury trial, appellant asked the trial court whether the time he previously served would count against the sentence he might receive for the two current charges. Appellant claimed that his attorney advised him that the maximum time he would serve would be twelve months. The trial court stated that the maximum would be twenty-four months less any time previously served. Appellant then again voiced his displeasure with trial counsel: "[APPELLANT]: Mr. Corzine, this man told me — MR. MCCLEESE: I told you Courtney directly that — [APPELLANT]: — today. Before today he didn't say that he said because my cases — MR. MCCLEESE: — oh, come on. [APPELLANT]: — were the same. THE COURT: Okay. Well, this is — we're putting the cart before the horse. Nobody's been convicted of anything yet. So we're not even talking about sentence. [APPELLANT]: But I'm saying. THE COURT: I'm going to go to trial. Right now I'm calling the jury in. * * *"
 {¶ 5} Appellant's counsel then advised the court that appellant wished to enter guilty pleas to the offenses: "MR. MCCLEESE: Now he's telling me he wants to plead. THE COURT: I'm not going to — you know, I'm not going to get jerked around. MR. MCCLEESE: Well, I don't — I don't blame you. THE COURT: Well, you know, we've been through all this. I think we're just going to go ahead."
 {¶ 6} After the state presented its opening statement, appellant's counsel repeated appellant's request to plead guilty. The following colloquy occurred: "THE COURT: What's he going to do when I tell him it's all going to be consecutive to his parole violation. MR. MCCLEESE: I'll find out right now. * * * THE COURT: What do you want to ask, Mr. Newland? [APPELLANT]: This is the only thing; I was willing to take the deal, your honor, but the thing I didn't understand was that's at the time that he told me my six months wasn't — that's the only thing. We wouldn't have never came this far. [sic] He told me six until the prosecutor told me — THE COURT: We're putting the cart ahead of the horse. You haven't been convicted of anything. [APPELLANT]: — No, sir. I'm saying when they offered me — THE COURT: I'm not talking about — I'm not talking about what sentence you're going to get, what sentence you're not going to get. MR. MCCLEESE: That's what I'm telling you. THE COURT: If you plead guilty, you're subject to two twelve months consecutive sentences. They are also subject to be run consecutively to any parole violation and I'm making no commitments as to what your sentence is going to be. [APPELLANT]: Well, when they first came in it was twelve months, that's the only thing. MR. MCCLEESE: That was before. THE COURT: Are we going to trial? Are we going to finish up this trial. [APPELLANT]: Yeah, but they didn't give me the twelve months. THE COURT: Let's go — let's go to trial. [APPELLANT]: Okay."
 {¶ 7} On the second day of trial, appellant failed to appear and the trial court continued the jury trial in appellant's absence. After the jury found appellant guilty of both offenses, the trial court sentenced appellant to two consecutive eleven-month prison terms and ordered appellant to pay restitution in an unspecified amount.
 {¶ 8} Appellant timely appealed the trial court's judgment and raises the following assignments of error. "FIRST ASSIGNMENT OF ERROR — The trial court violated Mr. Newland's rights to counsel and to due process clause [sic] under the Ohio and United States Constitutions when it denied his request for substitution of counsel. SECOND ASSIGNMENT OF ERROR — The trial court abused its discretion under Criminal Rule 11 and deprived appellant his rights under the due process clauses of the Ohio and United States Constitutions when it refused to accept his guilty pleas. THIRD ASSIGNMENT OF ERROR — The trial court committed plain error and violated appellant's rights under the due process clauses of the Ohio and United States Constitutions when it required appellant to pay restitution in an undetermined amount. FOURTH ASSIGNMENT OF ERROR — Mr. Newland was denied his rights to counsel and due process under the Ohio and United States Constitutions by his counsel's insufficient preparation and advise."
 {¶ 9} In his first assignment of error, appellant argues that the trial court abused its discretion by denying his request to substitute counsel without sufficiently inquiring into his request. Appellant further contends that he raised specific allegations to support his request to substitute counsel and that the allegations demonstrate a complete breakdown in his relationship with trial counsel. Specifically, appellant claims that (1) trial counsel had not communicated with appellant about a defense, (2) his counsel did not explain appellant's options and advise appellant what counsel thought appellant should do, and (3) counsel did not advise appellant regarding jail time credit. Appellant asserts that the record shows that "virtually no communication" occurred between appellant and trial counsel and that appellant did not trust trial counsel. Because we find that the trial court sufficiently inquired into appellant's request and that the trial court did not abuse its discretion by denying appellant's request, we overrule appellant's first assignment of error.
 {¶ 10} An indigent defendant is not entitled to the counsel of his choosing, but rather, only the right to competent, effective representation. See State v. Murphy (2001), 91 Ohio St.3d 516, 523,747 N.E.2d 765; State v. Cowans (1999), 87 Ohio St.3d 68, 72,717 N.E.2d 298; Thurston v. Maxwell (1965), 3 Ohio St.2d 92, 93,209 N.E.2d 204. The right to counsel does not guarantee the defendant a meaningful relationship with counsel. See Morris v. Slappy (1983),461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610; State v. Pruitt
(1984), 18 Ohio App.3d 50, 57, 480 N.E.2d 499. In order for a criminal defendant to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel. See State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus.
 {¶ 11} Thus, an indigent defendant is entitled to new counsel "only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." State v. Edsall (1996),113 Ohio App.3d 337, 339, 680 N.E.2d 1256; see, also, State v.Blankenship(1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559; Pruitt,18 Ohio App.3d at 57. Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See State v. Henness (1997), 79 Ohio St.3d 53,65-66, 679 N.E.2d 686. Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." Statev. Glasure (1999), 132 Ohio App.3d 227, 239, 724 N.E.2d 1165.
 {¶ 12} A defendant bears the burden of demonstrating that substitute counsel is warranted. State v. Carter (1998),128 Ohio App.3d 419, 423, 715 N.E.2d 223. Once an indigent defendant questions the adequacy of assigned counsel during trial, the court must inquire into the complaint on the record. Id; see, also State v. King
(1995), 104 Ohio App.3d 434, 437, 662 N.E.2d 389. Factors to consider in reviewing a defendant's request for substitute counsel include: "`the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" State v. Jones (2001), 91 Ohio St.3d 335,342, 744 N.E.2d 1163 (quoting United States v. Jennings (C.A.6, 1996),83 F.3d 145, 148). Additionally, when the timing of a request for new counsel is an issue, a trial court may consider whether the defendant's request for new counsel was made in bad faith. See State v. Haberek
(1988), 47 Ohio App.3d 35, 41, 546 N.E.2d 1361. A motion for new counsel made on the day of trial, "intimates such motion is made in bad faith for the purposes of delay." Id.
 {¶ 13} A trial court's decision regarding a request for substitute counsel is governed by an abuse of discretion standard. See Murphy,91 Ohio St.3d at 523; Jones, 91 Ohio St.3d at 343; State v. Smith (Dec. 29, 1998), Lawrence App. No. 98CA12. Thus, an appellate court will not reverse the trial court's decision absent an abuse of discretion.Murphy. The term "abuse of discretion" implies that the court's decision was "unreasonable, arbitrary, or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. Moreover, when applying the abuse of discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. See In re Jane Doe1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.
 {¶ 14} In State v. Gordon (2002), 149 Ohio App.3d 237,776 N.E.2d 1135, the appellate court determined that the trial court did not abuse its discretion by denying the defendant's request for substitute counsel. In Gordon, the defendant requested new counsel prior to trial. The defendant stated that he was unhappy with his counsel because (1) the plea bargain the state presented was harsher than what his counsel had stated could be negotiated, and (2) in the seven months before trial, the defendant had seen his counsel for a total of approximately four hours and at no point did counsel discuss trial strategy. The defendant subsequently decided to plead guilty.
 {¶ 15} Before pleading guilty, the defendant informed the trial court that he offered his plea "voluntarily, under duress." The defendant stated that he felt as if "his hands [were] really tied if I'm forced to go to trial with him * * * as my attorney." The defendant twice more advised the trial court that he did not want to go to trial with current counsel as his attorney.
 {¶ 16} On appeal, the defendant argued that the trial court abused its discretion by refusing his request for substitute counsel. The court of appeals disagreed, concluding that the record did not demonstrate a total breakdown in communication that jeopardized the defendant's right to effective assistance of counsel.
 {¶ 17} In the case at bar, appellant has failed to show that the trial court abused its discretion by denying his request, brought on the day of trial, to substitute counsel. Similar to the record in Gordon, the record here does not show a complete breakdown in the attorney-client relationship sufficient to implicate appellant's right to effective assistance of counsel. Rather, the record shows that appellant was unhappy with trial counsel because trial counsel was unable to secure a better "deal" for appellant. Appellant apparently believed that trial counsel should have negotiated a better sentence for two fifth degree felonies than what the state offered. However, a defendant's displeasure with a plea deal is not sufficient grounds for discharging court appointed counsel and substituting new counsel. See, generally, Gordon.
 {¶ 18} Appellant also claims that he did not understand the proceedings or how his attorney planned to present a defense. However, the trial court determined that appellant did understand the proceedings. The trial court also concluded that in light of the videotape evidence showing appellant committing the crimes, the defense strategy was limited. The court noted that appellant could not name any witnesses to support a defense. Moreover, appellant admits that he consulted at least a few times with his attorney, and appellant admitted that his trial counsel advised him of the state's plea offer. Cf. Gordon.
 {¶ 19} Additionally, the trial court reasonably could have decided that appellant's request, brought on the day of trial, was for purposes of delay. The trial court sat throughout the entire proceedings and was familiar with appellant. The trial court best was able to determine whether appellant's request was a delay tactic or a matter of just concern. See Haberek, supra; State v. Cox (Mar. 22, 2001), Franklin App. No. 00AP-565 (concluding that trial court did not abuse its discretion by denying the defendant's request for substitute counsel, brought on the day of trial).
 {¶ 20} We further disagree with appellant that the trial court erred by failing to sufficiently inquire into appellant's request for substitute counsel. Once appellant advised the trial court that he was unhappy with trial counsel's representation, the trial court inquired into the reasons for appellant's displeasure. The trial court afforded appellant ample opportunity to voice his concerns with trial counsel's representation.
 {¶ 21} In sum, the trial court did not abuse its discretion by denying appellant's request for substitute counsel. Therefore, we overrule appellant's first assignment of error.
 II {¶ 22} In his second assignment of error, appellant argues that the trial court abused its discretion by refusing to accept appellant's proffered guilty pleas. In particular, appellant contends that the trial court's statement that it was not "going to get jerked around" shows that the trial court abused its discretion. Appellant additionally claims that the trial court erred by denying his request without sufficiently inquiring and without sufficiently stating its reasons for denying the request. Because the record shows that appellant opted to forego pleading guilty and instead chose to proceed to trial, we disagree with appellant
 {¶ 23} "`Plea bargaining is a recognized fact of life in today's criminal justice system. It is accepted and approved as a method of disposing of criminal cases.'" State v. Ridgeway (1990),66 Ohio App.3d 270, 276, 583 N.E.2d 1123 (quoting Akron v. Ragsdale
(1978), 61 Ohio App.2d 107, 109, 399 N.E.2d 119). "`[T]he final judgment on whether a plea bargain shall be accepted must rest with the trial judge.'" Id. (quoting Ragsdale) "`When a recommended plea bargain is rejected, the court ought to state reasons for [its] rejection.'" Id.
(quoting Ragsdale).
 {¶ 24} In the case at bar, on the first day of trial, appellant twice informed the trial court that he wished to plead guilty. The trial court summarily denied appellant's first request, stating that it was not "going to get jerked around." When appellant again requested to plead guilty, the trial court inquired further. Upon further questioning, appellant then decided that he did want to have the case tried to a jury. Consequently, because appellant ultimately chose not to plead guilty, but instead chose to proceed to trial, we find no error.
 {¶ 25} Therefore, we overrule appellant's second assignment of error.
 III {¶ 26} In his third assignment of error, appellant argues that the trial court erred by ordering him to pay restitution without determining the amount to be paid. The state concurs. Because the trial court did not specify the amount of restitution, we sustain appellant's third assignment of error.
 {¶ 27} R.C. 2929.18(A)(1) requires the sentencing court to "determine the amount of restitution to be made by the offender." A review of the record shows that the trial court did not specify an amount of restitution. Accordingly, we conclude that the trial court erred by failing to determine the exact amount of restitution as R.C. 2929.18(A)(1) requires. See, generally, State v. Day, Lucas App. No. L-02-1013, 2003-Ohio-1863.
 {¶ 28} Therefore, we sustain appellant's third assignment of error and remand the matter to the trial court.
 IV {¶ 29} In his fourth assignment of error, appellant asserts that he did not receive effective assistance of counsel. Appellant complains that trial counsel rendered ineffective assistance by (1) failing to conduct adequate pretrial preparation, (2) failing to provide sufficient advice regarding the state's plea offer, and (3) incorrectly advising him that his prior time in jail would not count toward any current sentence.
 {¶ 30} Generally, in order to prove a claim of ineffective assistance of counsel a defendant must show that his counsel's performance was deficient, i.e., not reasonably competent, and that counsel's deficiencies prejudiced the defense. See Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In order to show that trial counsel performed deficiently and that trial counsel's deficient performance prejudiced the defendant's defense, the defendant must overcome the strong presumption that attorneys licensed to practice in Ohio are presumed competent. SeeBradley, 42 Ohio St.3d at 142; State v. Hamblin (1988), 37 Ohio St.3d 153,155-56, 524 N.E.2d 476. If one component of the Strickland test disposes of an ineffective assistance of counsel claim, a court need not address both components. See State v. Bishop, Vinton App. No. 02CA573, 2003-Ohio-1385.
 {¶ 31} Upon our review of the record, we do not believe that appellant has demonstrated that trial counsel's performance was deficient. First, nothing in the record substantiates appellant's claims of ineffective assistance of counsel. Instead, appellant relies on self-serving, conclusory allegations. Second, to prove his claims, appellant would need to refer to matters outside the record. "`For such cases, the General Assembly has provided a procedure whereby appellant can present evidence of his counsel's ineffectiveness. This procedure is through the post-conviction remedies of R.C. 2953.21.'" State v.Jacobson, Adams App. No. 01CA730, 2003-Ohio-1201, at ¶ 14 (quotingState v. Cooperrider (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452).
 {¶ 32} Therefore, we overrule appellant's fourth assignment of error.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellant and Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] Nothing in the record shows what period of time appellant spent in jail. However, both appellant and the state agree that appellant was in jail from September 26, 2001 to February 27, 2002.