[Cite as *State v. Campbell*, 2016-Ohio-389.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102788

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### PARIS CAMPBELL

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588251-A

**BEFORE:**    Stewart, J., E.T. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**    February 4, 2016

**ATTORNEY   FOR APPELLANT**

Mary Elaine Hall
The Leader Building, Suite 645
526 Superior Avenue
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

John D. Kirkland
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

**{¶1}** Defendant-appellant Paris Campbell appeals his convictions of trafficking in drugs and attempted illegal conveyance into a detention facility. On appeal, he raises five assignments of error. The first three assignments of error concern the impropriety of his representation, the fourth contends that his guilty pleas were not knowing, voluntary, and intelligent, and the fifth alleges ineffective assistance of counsel. For the reasons that follow, we affirm.

**{¶2}** In August 2014, the Cuyahoga County Grand Jury returned a seven-count indictment charging Campbell with two counts of drug trafficking; two counts of drug possession; illegal conveyance into a detention facility; tampering with evidence; and possessing criminal tools. On January 21, 2015, the court convened with the understanding that the parties had agreed to a plea deal whereby Campbell would plead guilty to Count 3, trafficking, in violation of R.C. 2925.03(A)(2), a second-degree felony that carried a mandatory prison sentence in the range of two to eight years and a mandatory drug fine of $7,500, and to amended Count 5, attempted illegal conveyance into a detention facility, a fourth-degree felony. The deal also required the forfeiture of a cell phone, $1,360, and an automobile.

**{¶3}** Retained defense counsel represented Campbell at the hearing. After the prosecutor's recitation of the terms of the agreement, the following exchange occurred:

The court: Counselor?

Defense counsel: Thank you very much, Your Honor. It's my understanding that Mr. Campbell wishes to withdraw his earlier pleas of not guilty and enter pleas of guilty as set forth here this morning. I've explained his Constitutional rights to him, I believe he understands them. No promises or threats were made

other than what's been put on the record here today to get him to change his plea here today.   Thank you, Judge.

Campbell:   Excuse me.

The court:   Yes.

Campbell:   I don't want to make a plea today.   I want to fire my lawyer, because I don't feel he's working in my favor.   I want to ask for time to get a new lawyer.

The court:   He's retained.   You hired him.

Campbell:   I know.   I want another lawyer, because the motions I've asked him to put in, he never put in.   I feel he's not working in my favor.

* * *

The court:   So it's your intention then to retain someone else?

Campbell:   Yes.

* * *

The court:   Okay.   Scratch the plea.   It will be continued at the Defendant's request.

{¶4} The court revoked Campbell's bond and remanded him to county jail.   The journal entry issued that same day set the next pretrial for January 26, 2015.

{¶5} On January 28, 2015, the court reconvened with the expectation that Campbell once again intended to plead guilty to certain charges contained in the indictment.   A partner from the law firm of Campbell's originally retained counsel appeared at the hearing.   Following the prosecutor's recitation of the plea deal, the bailiff addressed the judge to inform the court that Campbell had changed his mind and was not going to plead guilty at that time.   The following discussion ensued:

The court: There is no plea?

Defense counsel: No, there is no plea, your honor.    I apologize.

The court: What are we here for then?

Defense counsel: I thought it was.    As the Court's aware, [my partner] is counsel of record, was or is.    I was here for [him].    My understanding was that there was a plea.    Apparently there's a misunderstanding.    My client thought that the offer from the state was going to be a felony of the third degree and a felony of the fourth.    When I indicated to him, per a discussion with [the prosecutor] just prior to going on the record, that it was a two and a four, he indicated that he's not willing to plea to that as offered.    That's all.

{¶6} Thereafter, the court engaged in discussions with defense counsel and the prosecutor about the reinstatement of bond.    Defense counsel explained to the judge that the original attorney informed him that the prosecutor had agreed not to object to the reinstatement of bond pending a PSI report once a plea was placed on the record.    The prosecutor confirmed that she did not object to bond but agreed with the trial judge that it was a moot point if there was not going to be a plea.    The judge stated, "[i]f we don't have a plea, go back in the back and we'll give him a trial date."    At that point, Campbell immediately addressed the court and said that he would enter a guilty plea.

{¶7} The court asked Campbell if he would like to consult with his attorney first but Campbell declined.      The court went through the Crim.R. 11 colloquy, informing Campbell of the rights he was waiving and the consequences of entering a guilty plea. Campbell proceeded to plead guilty to drug trafficking and attempted illegal conveyance into a detention facility.    On a later date, the court sentenced him to seven years in prison on the trafficking charge in addition to an 18-month concurrent prison term on the illegal conveyance charge.

{¶8} In his first assignment of error, Campbell complains that the trial court committed structural constitutional error when it failed to inquire about and/or allow the representation by his original attorney's law partner at the second plea hearing and sentencing.[1]

{¶9} Structural errors are constitutional defects that affect the entire framework of a judicial proceeding. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17. These errors permeate and infect the proceeding from beginning to end, such that it cannot "'reliably serve its function as a vehicle for determination of guilt or innocence.'" *Id.,* quoting *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Structural errors are, therefore, per se reversible and require no showing of prejudice by the defendant. *Id.*, citing *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9. Only a small class of constitutional errors have been deemed structural errors. *Id.* Errors of this kind include the denial of counsel of choice, denial of self-representation, denial of a public trial, and the denial of a reasonable doubt instruction. *United States v. Davila*, 569 U.S. __, 133 S.Ct. 2139, 2149, 186 L.Ed.2d 139 (2013). For all other constitutional errors that do not rise to the level of being structural, reviewing courts must apply a harmless-error analysis under Crim.R. 52(A). *See Perry* at ¶ 16; *see also Davila* at 2139.

{¶10} Campbell argues that the trial court effectively denied him the right to counsel of his choice when it allowed the partner to represent him at the plea hearing and failed to inquire about a potential conflict of interest in the representation. We disagree.

{¶11} In *United States v. Gonzales-Lopez*, 548 U.S. l40, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), the Supreme Court explained that the Sixth Amendment's right to counsel provides an

---

[1]Campbell's argument on appeal and the trial court's sentencing entry state that the partner represented Campbell at both the second plea hearing and sentencing. However, the transcript of the sentencing indicates that Campbell's original lawyer appeared on behalf of Campbell at the sentencing.

accused with not only the right to be represented by counsel but also the right to be defended by the counsel he believes to be best. In *Gonzales-Lopez*, a criminal defendant retained a California attorney to represent him in Missouri on pending drug charges. The district court twice denied the attorney's applications to appear pro hac vice on the basis of what the Supreme Court referred to as a "putative" violation of a Missouri rule of professional conduct in a completely separate case before the court. The court further denied the request of appointed local counsel to have the California attorney sit at the counsel table and issued a no contact order between the two lawyers during the proceedings. The Supreme Court found that the trial court erred by failing to allow the attorney to represent his client. The Court held that "[d]eprivation of [the right to counsel of choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of representation he received." *Id.*

{¶12} In this case, unlike in *Gonzales-Lopez*, the trial court did not deny Campbell the right to his counsel of choice. On the contrary, the court discontinued the original plea hearing at Campbell's request so that he could find a new attorney. A week later, Campbell appeared with a different lawyer at the second plea hearing. Although the court revoked Campbell's bond after the first hearing and remanded him to jail, giving him limited opportunity at best to retain new counsel, during the hearing, Campbell expressed no objections to the partner's representation; did not complain that he was unable to secure a new lawyer; did not ask for a continuance to find another lawyer, and did not ask for appointed counsel. Given the relative ease with which Campbell addressed the court in the original hearing (when he interrupted proceedings to tell the court that he did not want to plead guilty and wanted to "fire" his attorney), one would expect Campbell to have felt similarly free to explain to the court that he did not consent to new counsel's representation if that was indeed the case. Rather, Campbell

remained silent until he told the court that he would plead guilty to the charges. From these facts, we cannot say that the court committed error, let alone constitutional structural error by denying Campbell his right to counsel of choice when the record fails to demonstrate that Campbell actually terminated his attorney-client relationship with originally retained counsel and did not consent to further representation by retained counsel's law partner. We therefore overrule the assignment of error.

{¶13} In his second assignment of error, Campbell asserts that he was deprived of counsel of choice when his "fired" attorney's law partner represented him without informed written consent, in violation of Prof.Cond.R. 1.7. Campbell subsequently withdrew this argument after acknowledging that the Ohio Supreme Court has exclusive jurisdiction to hear complaints regarding alleged violations of the rules of professional conduct.

{¶14} In his third assigned error, Campbell argues that the trial court committed constitutional error when it failed to ask him, or otherwise inquire of him, whether the lawyer he appeared with at the second hearing had informed consent to represent him. Again, we disagree.

{¶15} "Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." *State v. Gillard*, 64 Ohio St.3d 304, 311, 595 N.E.2d 878 (1992). This duty arises from both the "general principles of fundamental fairness" and "the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest." *Id.* Where a trial court breaches its affirmative duty to inquire, prejudice will be presumed. *Id.* at 311-312.

{¶16} Because we do not find that the trial judge knew or should have known about the potential for a conflict of interest, we cannot conclude that the court breached an affirmative duty to inquire. During the entirety of the case, neither the state, nor counsel appearing on behalf of Campbell, nor Campbell himself, ever made the trial court aware of a potential conflict of interest in the representation. While Campbell argues on appeal that the court should have been aware of a potential for conflict when the law partner explained at the second plea hearing that he was filling in for retained counsel who "was or is" counsel of record, we disagree that this statement put the court on notice. At best, the law partner's statement is ambiguous. It does not indicate whether retained counsel's services were in fact terminated. The import of the statement was simply to explain why the law partner was appearing on behalf of the defendant, not to inform the court of a potential conflict.

{¶17} We also cannot conclude that the court was or should have been independently aware of a potential conflict. Although Campbell voiced his intent to terminate retained counsel's services during the original plea hearing, nothing in the record suggests that Campbell actually carried through with the termination. Indeed, a court could reasonably infer from the record that Campbell maintained the attorney-client relationship. For instance, retained counsel's law partner refers to Campbell as his "client" numerous time during the second plea hearing without Campbell voicing any opposition to the designation, and certain statements made by the law partner suggest that originally retained counsel continued to act as defense counsel following the initial plea hearing by engaging in further plea negotiations with the prosecutor.[2]

---

[2] At the second plea hearing, the law partner made the judge aware of a conversation that allegedly occurred between retained counsel and the prosecutor following the original plea hearing. The law partner stated specifically that "there was a discussion between [retained counsel] and [the prosecutor] that [Campbell] would enter a plea as offered by the State, with the understanding that [the prosecutor] would not object to the reinstatement of the bond." Tr. 11–12.

Moreover, the transcript indicates that originally retained counsel appeared on Campbell's behalf at the sentencing hearing without objection from Campbell. Therefore on these facts, we cannot find that the trial court had an affirmative duty to inquire about a potential conflict.

{¶18} Campbell next contends that the "trial court violated Crim.R. 11 because it knew as a matter of law that Campbell did not enter knowing, intelligent or voluntary guilty pleas." Specifically, Campbell cites to the statement he made that he "had no choice" but to enter a guilty plea to the charges. The statement occurred during the Crim.R. 11 colloquy following the court's explanation of the potential consequences of pleading guilty to crimes that were committed while on PRC in a different case:

> The court:  Have you been in contact with the parole officer?
>
> Campbell:  No.
>
> [Counsel]:  Your Honor, they're aware of it, because that's why they didn't put a hold on him while this case was pending. So they were waiting for the outcome to make a determination on what they were going to do with the parole.
>
> The court:  Yeah, you got a tail of two-and-a-half years; did you know that?
>
> Campbell:  No.
>
> The court:  Well, now that you know that, you understand the jeopardy, is it then your intention to continue with the plea?
>
> Campbell:  I have no choice.
>
> The court:  So the answer is yes?
>
> Campbell:  Yes, I have no choice.
>
> The court:  Okay.

The court went on to accept Campbell's plea and find him guilty on the charges.

{¶19} Campbell contends that his statement that "he had no choice" evidences the fact that he felt coerced into taking the plea because he was represented by an attorney that he did not wish to have and was not afforded a meaningful opportunity to find new counsel. In support of this argument, he cites to *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135 (1st Dist.). In *Gordon,* the First District vacated a defendant's guilty plea after finding the plea involuntary when the facts showed that the trial court refused to appoint new defense counsel and that the defendant entered a guilty plea after repeatedly saying that he was entering the plea because it was preferable to going to trial represented by his current attorney. *Id.*

{¶20} The record before us does not lead us to the same conclusion as the court in *Gordon*. Unlike the defendant in *Gordon*, Campbell never told the court that he felt like he had no choice but to enter a plea *because* he was not represented by counsel of choice. Instead, Campbell simply stated that he had no choice. And when the court asked if that was a "yes," Campbell replied that it was. Although the trial court would have made a better record with further inquiry as to why Campbell felt as if he had "no choice," we cannot say that Campbell has proven his claim that his plea was involuntary.

{¶21} Lastly, Campbell contends that both lawyers were ineffective for failing to file an affidavit of indigency prior to sentencing so that the court would be authorized to waive mandatory fines.

{¶22} In order to prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of proving 1) that counsel's performance was deficient in some manner, and 2) that the deficient performance caused him prejudice — i.e. that the result of the proceeding would have been different but for counsel's error. *Strickland v. Washington*, 466 U.S. 668, 688,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986).

**{¶23}** In Ohio, trial courts must impose all mandatory fines associated with certain drug trafficking offenses. *See* R.C. 2925.03(D)(1). Pursuant to R.C. 2929.19(B)(1) however, a defendant can avoid paying mandatory fines if he files an affidavit of indigency prior to sentencing and the trial court determines that the defendant is unable to pay the fine(s). In such instances, the trial court has no choice but to waive the fines. *See* R.C. 2929.19(B)(1).

**{¶24}** Even if we were to assume that Campbell's counsel was deficient for failing to file an affidavit of indigency, we cannot conclude that counsel was ineffective because Campbell has not shown that he was prejudiced by the failure to file the affidavit. In other words, we cannot conclude that there was a reasonable probability that the court would have found him indigent. *Accord State v. Miller*, 8th Dist. Cuyahoga No. 86505, 2006-Ohio-4752 (explaining that the failure to file an affidavit of indigency only amounts to ineffective assistance of counsel where the record shows a reasonable probability that the court would have waived the fines based on a finding of indigency). Campbell does not argue that there was a reasonable probability that the trial court would have found him incapable of paying the mandatory fines and would have waived them, and nothing in our independent review of the record leads us to this conclusion. In fact, the record seems to mitigate against the waiver of fines since Campbell had retained counsel. We therefore overrule this assigned error.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR