[Cite as *State v. Allen*, 2023-Ohio-192.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 21CA3969 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| BRYAN S. ALLEN, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Gerald T. Noel, Jr., Noel Law LLC, Columbus, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant, Bryan S. Allen, appeals the judgment of the Scioto County Court of Common Pleas convicting him of one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(e), a first-degree felony; one count of aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(d), a first-degree felony; one count of possessing criminal tools in violation of R.C. 2923.24(A) and (C), a fifth-degree felony; and one count of conspiracy in violation of R.C. 2923.01(A)(1) and (J)(2), a second-degree felony. His convictions were entered after he pleaded no contest to each of the charges. On

appeal, Allen contends 1) that the trial court abused its discretion when it failed to properly consider and grant his motion to withdraw his guilty plea; and 2) that the trial court abused its discretion in denying his motion to suppress. For the reasons that follow, we find no merit to either of Allen's assignments of error. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} This matter stems from a traffic stop on U.S. Route 23 in Scioto County, Ohio at approximately 10:47 p.m. on January 14, 2020. The record reflects that Ohio State Highway Patrol Trooper Anthony Day was traveling southbound near mile post #14 when he witnessed a white van that was traveling in the right lane "travel across the white fog line [on] two occasions by at least a half tire width." Trooper Day initiated a stop of the vehicle where he encountered the driver, Jelani Harper, and Appellant, Bryan Allen, who was a passenger in the car. The trooper initially noted that the license plate on the van didn't match the information in the system. The plate matched a Toyota, rather than the Dodge minivan that the men were driving. Additionally, the two men gave what the trooper considered to be suspicious information, claiming that they were traveling to West Virginia for what one called "masonry" work and the other called "missionary" work. The trooper questioned why neither of them appeared to be

dressed for that type of work and had no luggage or extra clothing in the van.

Additionally, Allen did not have any identification with him.

{¶3} Because Allen lacked identification, dispatch was not immediately able to confirm his information.  During this time, Trooper Nick Lewis arrived as back-up.  While waiting on information from dispatch, Trooper Day made the decision to walk his K9 around the vehicle.  When the K9 alerted on the driver's side, back door area of the van, both Harper and Allen were read their *Miranda* rights and placed in the back of Lewis's cruiser so that the troopers could search the van.

{¶4} The record further reflects that the subsequent search of the van took between two and three hours and was started and stopped three times.  The troopers initially searched the interior of the van while Harper and Allen waited in the back seat of the cruiser.  While in the cruiser, the men were being video and audio recorded as they watched the search take place.  When the troopers failed to locate drugs hidden in the interior of the van during the initial part of the search, they removed the men from the cruiser, had them get back into their van, and the troopers then reviewed the video and audio footage from inside the cruiser.  Based upon statements and body movements of the men, they then resumed their search of the van to areas that seemed to be of interest to the men based upon their conversation in the back of the cruiser.  The troopers repeated this pattern twice: placing the men in the cruiser, searching the van, removing the men from the

cruiser, reviewing video footage, and then resuming the search. Finally, the troopers located a black package that contained 11 different baggies with a total of approximately 1000 pills that were later determined to be oxycodone. The package was hidden behind an interior panel located on the rear passenger side of the van, near the wheel well.

{¶5} Both men were placed under arrest at that time. Allen was subsequently indicted on February 12, 2020, on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(e), a first-degree felony; one count of aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(d), a first-degree felony; one count of possessing criminal tools in violation of R.C. 2923.24(A) and (C), a fifth-degree felony; and one count of conspiracy in violation of R.C. 2923.01(A)(1) and (J)(2), a second-degree felony. Allen pled not guilty to the charges and the matter proceeded through the discovery process.

{¶6} Allen filed a motion to suppress, through his first counsel, on May 12, 2020, asking that all evidence that was obtained as a result of the search of the vehicle be suppressed. The motion claimed the evidence was seized as a result of "the illegal stop and seizure[.]" The entirety of the memorandum filed in support of Allen's motion stated as follows: "Mr. Allen's co-defendant Jelani Harper has previously filed a motion to suppress with memorandum attached. Counsel for Bryan Allen incorporates by reference the motion as if fully rewritten here."

However, Harper's motion to suppress and memorandum in support was not actually made part of Allen's trial court record below, and it is not part of the record on appeal.

{¶7} As discussed more fully below, it does not appear that Allen's motion to suppress challenged the initial stop, the use of the K9, or the scope of the search. Rather, it appeared to simply challenge the length of the search. A hearing was held on the motion to suppress where the State presented testimony from Trooper Day and five different videos from both Day's and Lewis's cruisers were played and admitted into evidence. Trooper Day testified regarding the fog line violation that led to the initial stop, the alert of the K9, as well as the process used to obtain clues from Allen and Harper to assist in the search of the van. Trooper Day testified that upon reviewing the video, he was able to hear Allen ask Harper "if they found it," to which Harper replied "no but they're close." The trial court noted that it could not hear that on the video.[1] The trial court ultimately denied the motion to suppress on August 4, 2020, and the matter proceeded.

{¶8} Allen obtained new counsel who filed a notice of appearance on November 23, 2020, and who subsequently filed a "Renewed Motion to Suppress Evidence and Motion for Reconsideration of Judgment Entry Filed 8/4/20." The

---

[1] This Court reviewed the video as well and shares in the trial court's inability to hear the alleged statement on the video. However, between the static, radio interruptions and passing road traffic noise, it was very difficult to decipher most of the conversation between the men while they were in the cruiser. However, some statements were ascertainable, as were their demeanor and hand motions.

renewed motion primarily challenged the initial stop of the vehicle in light of a new case released by the Supreme Court of Ohio addressing whether a fog line violation constitutes reasonable, articulable suspicion to initiate a traffic stop. The motion also attempted to raise additional issues related to the initial stop, detention, K9 sniff, scope and length of the search. The trial court issued an order on June 8, 2021, allowing Allen's motion "as to whether the trooper had reasonable articulable suspicion to stop the defendant's vehicle[,]" but it denied that motion to the extent it sought to raise additional arguments, including arguments related to the scope and length of the stop.

{¶9} A second suppression hearing was held on August 6, 2021. The court made clear that the only issue that would be addressed was whether the stop was justified to the extent it was based upon a fog line violation. Allen's counsel argued that new guidance from the Supreme Court of Ohio indicated that a vehicle tire must go completely over the fog line in order for there to a be a violation of R.C. 4511.33(A)(1) and that the tire of the vehicle in which Allen was a passenger was simply "over" or "on" the line, not across it. However, the trial court found, based upon its review of the video and additional testimony by Trooper Day, that the tire crossed the outside portion of the line and that a violation occurred.

{¶10} Thereafter, Allen entered into a plea agreement on the morning of his scheduled trial whereby he agreed to plead no contest to all four of the charges

contained in the indictment. A change of plea hearing was held on August 23, 2021. On the morning of trial, Allen expressed his desire for a continuance and to obtain new counsel. The trial court noted that the matter had been continued several times and that Allen was already on his second lawyer. Allen stated that the relationship between him and his counsel had deteriorated and that he believed his counsel was "unprepared to go to trial." The trial court informed Allen his counsel was experienced and had even convinced the court to hold a second suppression hearing, which the court said "it would almost never do." When it became clear that Allen's choices were either to plead or go forward with the trial that day, Allen elected to plead no contest to the charges.

{¶11} Subsequently, Allen fired his counsel and obtained a new attorney, his third during the pendency of the case, who filed a "Motion to Withdraw Guilty Plea Pursuant to Crim.R. 32.1" on Allen's behalf on September, 20, 2021, just two days prior to the scheduled sentencing. Allen's motion essentially claimed that he entered his no contest pleas after a "contentious disagreement" with his counsel, who he claimed "refused to take the case to trial." Allen further claimed that he only pled no contest because "he had no other options on that date[,]" and that he was "actually innocent of the charges." In support of his motion, he attached an affidavit by his co-defendant, Jelani Harper, stating Allen had no knowledge of the drugs in the vehicle.

{¶12} A hearing was held on the motion on October 28, 2021. Allen offered no evidence during the hearing, but instead rested on Harper's affidavit that was filed in support of his motion. The State introduced additional testimony from Trooper Day regarding the statements made by Allen while being held in the cruiser during the search of the van. The trial court ultimately denied Allen's motion and went forward with sentencing on that date. A judgment entry of sentence was filed on November 3, 2021, where the trial court found that the aggravated trafficking in drugs, aggravated possession of drugs, and conspiracy counts all merged for purposes of sentencing. The State elected to proceed with sentencing on the aggravated trafficking in drugs count and the trial court imposed a mandatory minimum prison term of 9 years to an indefinite maximum prison term of up to 13 years and 6 months on that count. The trial court also imposed a six-month prison term on the possessing criminal tools count, to be served concurrently to the other prison term. It is from this final order that Allen now brings his timely appeal, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO PROPERLY CONSIDER AND GRANT DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS. THE TRIAL COURT ERRED IN

DENYING HIS MOTION TO SUPPRESS, GIVEN THE FOLLOWING: THAT THE FINDINGS OF FACT STATED BY THE TRIAL COURT IN ITS DECISION DENYING APPELLANT'S MOTION TO SUPPRESS WAS [SIC] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THAT THE COURT MISAPPLIED THE LAW WHILE IGNORING THE LAW AS APPLIED TO THE FACTS; THAT THERE WAS INSUFFICIENT JUSTIFICATION AND INSUFFICIENT REASONABLE SUSPICION FOR AN INVESTIGATORY STOP OF APPELLANT; AND THERE WERE NO ARTICULABLE FACTS FOR ANY ADDITIONAL INSTRUSION UPON THE DEFENDANT EVEN IF THERE WAS SUFFICIENT JUSTIFICATION AND REASONABLE SUSPICION FOR AN INVESTIGATORY STOP.

## ASSIGNMENT OF ERROR I

{¶13} In his first assignment of error, Allen contends that the trial court abused its discretion when it failed to properly consider and grant his motion to withdraw his no contest pleas. Allen argues that his motion should have been freely and liberally granted, as it was made prior to sentencing. He also argues that the relevant factors that must be considered when reviewing such a motion weigh in favor of allowing his plea to be withdrawn. The State, on the other hand, contends that that denial of the motion was proper and that the judgment of the trial court should be affirmed.

### Standard of Review

{¶14} Crim.R. 32.1 states as follows:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

*See also State v. Curtis*, 4th Dist. Meigs No. 20CA6, 2021-Ohio-1145, at ¶ 10. Although "a presentence motion to withdraw a guilty plea should be freely and liberally granted[,] * * * a defendant does not have an absolute right to withdraw a plea prior to sentencing." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). " 'The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.' " *State v. McCoy*, 4th Dist. Gallia No. 19CA4, 2020-Ohio-3088, ¶ 12, quoting *Xie* at paragraph two of the syllabus. An "abuse of discretion" is "an unreasonable, arbitrary, or unconscionable use of discretion" or "a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶15} In *Curtis*, we recited the nine factors we must consider when reviewing a trial court's ruling on a presentence motion to withdraw a guilty plea as follows:

> "(1) whether 'highly competent counsel' represented the defendant; (2) whether the trial court afforded the defendant 'a full Crim.R. 11 hearing before entering the plea'; (3) whether the trial court held 'a full hearing' regarding the defendant's motion to withdraw; (4) 'whether the trial court gave full and fair consideration to the motion'; (5) whether the defendant filed the motion within a reasonable time; (6) whether the defendant's

motion gave specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his plea; (8) whether the defendant is 'perhaps not guilty or ha[s] a complete defense to the charges'; and (9) whether permitting the defendant to withdraw his plea will prejudice the state."

*Curtis* at ¶ 11, quoting *State v. Howard*, 2017-Ohio-9392, 103 N.E.3d 108, ¶ 24 (4th Dist.), in turn quoting *State v. McNeil*, 146 Ohio App.3d 173, 176, 765 N.E.2d 884 (1st Dist.).

{¶16} " ' " 'Consideration of the factors is a balancing test, and no one factor is conclusive.' " ' " *Curtis* at ¶ 11, quoting *State v. Howard* at ¶ 24, quoting *State v. Jones*, 10th Dist. Franklin No. 15AP-530, 2016-Ohio-951, ¶ 14, in turn quoting *State v. Zimmerman*, 10th Dist. Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13.

{¶17} Further, as explained in *Curtis*, the ultimate question that must be answered is whether there is a reasonable and legitimate basis for the motion to withdraw the plea, understanding that a mere change of heart does not constitute a reasonable and legitimate basis to allow a plea to be withdrawn. *See Curtis* at ¶ 11, citing *Howard* and *Jones*, *supra*. *See also State v. Delpinal*, 2d Dist. Clark Nos. 2015-CA-97 & 2015-CA-98, 2016-Ohio-5646, ¶ 9, quoting *Xie, supra,* at 527.

Legal Analysis

{¶18} We initially note that the record indicates that the trial court held a change of plea hearing where it discussed with Allen the maximum potential

penalties, indefinite sentencing, the nature and elements of the charges, and the mandatory prison terms. The Court also discussed the effect of a no contest plea. Furthermore, the Court individually inquired of Allen as to whether he understood his rights and that he was waiving his rights. Allen acknowledged understanding to all the inquiries of the court. Moreover, a consideration of the above-listed factors supports the conclusion that the trial court's decision to deny Allen's presentence motion to withdraw his guilty pleas was not unreasonable, arbitrary, or unconscionable. Thus, we cannot conclude that that trial court abused its discretion by denying his motion to withdraw his guilty pleas.

{¶19} For example, the record reveals that the trial court held a hearing on the motion to withdraw where it heard arguments of counsel and was presented with additional evidence by the State. Although the trial court did not address each of the nine factors individually, it stated that it had considered the evidence and arguments and that it had considered all nine of the above factors. Importantly, this Court has held "that those nine factors apply on appellate review and not necessarily when the trial court reviews the motion in the first instance." *State v. Howard*, *supra*, at ¶ 35. As we discussed in *Howard*, although "some of the nine factors may be relevant for trial courts to consider when evaluating a presentence motion to withdraw a guilty plea," there is no authority to suggest that a trial court is required "to engage in a factor-by-factor analysis that explains its reasoning for

denying a presentence motion to withdraw a guilty plea." *Id.* This Court, however, must undertake a review of the nine factors.

{¶20} With respect to the first factor, whether Allen had highly competent counsel, we note this factor weighs in favor of the State. Although Allen voiced his concerns the day of the plea hearing that his relationship with counsel had deteriorated and that counsel was unprepared, the trial court informed Allen that his trial counsel was not only experienced, but that having witnessed trial counsel try cases in the past, counsel was "effective," "prepared," and "organized." The trial court reminded Allen that his trial counsel had convinced the court to hold a second suppression hearing and that, as such, Allen had "had the benefit of experienced counsel." With regard to the preparedness of counsel and his alleged unwillingness to take the case to trial, the trial court stated during the change of plea hearing that contrary to Allen's arguments, Allen's trial counsel arrived early the morning of the hearing, had jury questionnaires and was ready to begin jury selection. Thus, the trial court found on the record that it believed Allen's concerns voiced on the morning of the change of plea hearing to be disingenuous and made for purposes of delay.

{¶21} In *Howard*, *supra,* this Court observed that an attorney's advice or urging to accept a plea deal does not constitute ineffective assistance of counsel, especially where an appellant, at the change of plea hearing, denied that anyone

had coerced him into pleading guilty. *Id.* at ¶ 30, citing *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 23, and *State v. Shugart*, 7th Dist. Mahoning No. 08MA238, 2009-Ohio-6807, ¶ 37; *State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 23. *See also State v. Campbell*, 8th Dist. Cuyahoga No. 102788, 2016-Ohio-389, ¶ 18-20 (rejecting defendant's argument that he did not voluntarily enter guilty plea when defendant stated at plea hearing that he felt he had "no choice" but to plead guilty). In the case presently before us, when asked during the change of plea hearing whether anyone had threatened him, promised him anything or induced him to enter his pleas, Allen stated no.

{¶22} Further, we also pointed out in *Howard* that the trial court is in the best position to evaluate a defendant's credibility and truthfulness, as well as his motivations in initially pleading and then later seeking to withdraw a plea. *Howard* at ¶ 28-29, citing *State v. Ganguly*, 2015-Ohio-845, 29 N.E.3d 375, ¶ 17 (10th Dist.), *State v. Burris*, 10th Dist. Franklin No. 13AP-238, 2013-Ohio-5108, ¶ 18, and *State v. Watkins*, 10th Dist. Franklin Nos. 13AP-133 and 13AP-134, 2013-Ohio-5544, ¶ 11, reversed on other grounds, 150 Ohio St.3d 366, 2016-Ohio-8464, 81 N.E.3d 1241 (noting that "the trial court is in the best position to evaluate both the motivation of the defendant in pleading guilty and the credibility and weight to be given to the reasons offered for seeking withdrawal of the plea"). As noted

above, the trial court simply found Allen's concerns he voiced during the change of plea hearing to be disingenuous and made for purposes of delay.

{¶23} Regarding the second, third, and fourth factors, the record indicates that Allen was afforded a full Crim.R. 11 hearing before entering his plea. The record further demonstrates that the trial court held a full hearing on Allen's motion to withdraw and that the trial court gave full and fair consideration to the motion. Although Allen had requested a continuance of his trial and initially voiced reluctance at entering no contest pleas, the trial court explained that a continuance would not be possible due to the age of the case on the docket. When Allen's options of either going to trial or entering into a plea agreement were made clear to him, Allen opted to enter no contest pleas. Although Allen stated that he had not had an opportunity go over the waiver and maximum penalty documents with his counsel before signing them, the trial court went over each form and Allen asked questions at some points and then voiced understanding as to the contents of the forms, the rights he would be waiving, and the maximum penalties he would be facing. Further, the record reflects a full hearing was held on Allen's motion to withdraw his pleas where the State offered additional evidence and the trooper again testified regarding statements by Allen and his co-defendant that were made during the search of the vehicle that indicated knowledge of the fact that drugs were hidden in the vehicle.

{¶24} As to the fifth factor, the trial court did not expressly discuss whether it believed the motion to have been filed within a reasonable time, but the State pointed out that although the motion was filed before sentencing, it was filed approximately three weeks after the change of plea hearing and only two days before the scheduled sentencing hearing. Thus, whether the motion was filed within a reasonable time is debatable.

{¶25} With respect to the sixth factor, whether the defendant's motion gave specific reasons for withdrawal, Allen's motion's stated reason for seeking to withdraw his pleas was that "he is actually innocent of the charges." In support of his assertion of actual innocence, he referenced his disagreement with his counsel regarding case strategy, stating that although he had desired to exercise his right to a jury trial, he entered no contest pleas "due to the fact that his Counsel refused to take the case to trial and [he] felt he had no other options on that date." He also referenced the filing of an "unsolicited affidavit" dated September 16, 2021, by his co-defendant, Jelani Harper, stating that Allen was only along for the ride at Harper's request, to help him drive on a trip to West Virginia.

{¶26} However, as stated above, the trial court found Allen's arguments that his counsel was unprepared to go to trial, despite Allen's alleged desire for a jury trial, to be disingenuous. Although Allen argued that his counsel "refused to take the case to trial," the trial court specifically found that counsel showed up early the

day of the scheduled trial, had jury questionnaires ready and was ready for jury selection. Further, although the trial court made no express findings regarding Allen's claim of actual innocence, the trial court stated it had considered the arguments of counsel, which included arguments by the State that although there had actually been two affidavits of Jelani Harper filed, they were inconsistent regarding why Allen was present during the trip on the night in question.

{¶27} For example, an affidavit by Harper in January of 2021 stated that "on the night of the incident I was taking Bryan to Beckley, WV," and that Harper simply planned to stop in Huntington along the way to "take care of [his] business." However, the later Harper affidavit filed in September of 2021 stated that "I asked my friend Brian Allen (co-defendant) if he would ride with me to West Virginia * * * I just wanted someone to keep me company on the way and possibly help me in driving." The State argued that while one affidavit suggested that Harper was actually giving Allen a ride at Allen's request, the second affidavit suggested that Allen was simply riding along at Harper's request. Importantly, the State pointed out that both scenarios were inconsistent with the statements given to law enforcement at the time of the stop, where both Allen and Harper claimed to be driving to West Virginia to seek work, as either "masons" or "missionaries." The State also argued that in order to meet its burden, Allen could not simply rest on the allegations set forth in the affidavits, but rather he was required to introduce

evidence in the form of testimony by Harper during the hearing on the motion to withdraw. We conclude that consideration of this factor ultimately weighs in favor of the State.

{¶28} As to the seventh factor, whether the defendant understood the nature of the charges, the possible penalties and the consequences of the plea, we have already discussed that he did and thus, this factor weighs in favor of the State. With respect to the eighth factor, whether the defendant is "perhaps not guilty or ha[s] a complete defense to the charges," we have found below that the trial court did not err in denying Allen's motion to suppress and thus, all evidence regarding his statements made upon the initial stop and during the search indicating knowledge on his part that there were drugs hidden in the vehicle would have been admissible at trial. Likewise, the trial court considered Allen's claim of actual innocence against the backdrop of his claim that he only pled no contest due to differences with this trial counsel, despite actually desiring to go trial, and the trial court found Allen's claims to be disingenuous and only made for purposes of delay. Based upon the limited record before us, which was not fully developed before appeal, we believe this factor should weigh in favor of the State and we cannot conclude that the trial court abused its discretion in denying Allen's motion.

{¶29} Finally, with respect to the ninth factor, whether permitting the defendant to withdraw his plea will prejudice the State, we find the matter to be

somewhat debatable. The State argued that the plea agreements for Allen and his co-defendant were a package deal and that the State never intended to allow one to plead and the other one to go to trial. However, as noted by Allen, if the trial court's observations are correct that Allen clearly had the option to either go to trial or plead, the State would have had to take the case to trial despite the fact that Harper had already entered pleas. Allen's counsel argued during the hearing that if the State could have been ready to go to trial the day of the scheduled trial, even though Harper had already pled, it could be ready to go to trial now. Although the trial court did not expressly address the ninth factor, we conclude this factor weighs in Allen's favor.

{¶30} The trial court ultimately denied Allen's motion, finding that after reviewing the motion, affidavit, exhibits, witness testimony, arguments of counsel and all of the relevant factors, "there [was] no reasonable and legitimate basis" to allow Allen to withdraw his pleas. We find that the record supports the trial court's conclusion and therefore we cannot conclude that the trial court abused its discretion in denying Allen's motion to withdraw his pleas. Accordingly, we find no merit to Allen's first assignment of error and it is hereby overruled.

ASSIGNMENT OF ERROR II

{¶31} In his second assignment of error, Allen contends that the trial court erred in denying his motion to suppress. More specifically, Allen argues that the

trial court's findings of fact regarding the circumstances leading up to the initial stop were against the manifest weight of the evidence. Although he concedes that this Court deferentially reviews questions of fact when considering an appeal from the denial of a motion to suppress, he argues that such deference must only be afforded when the factual findings are supported by competent, credible evidence, which Allen argues the record here lacks. Allen ultimately contends that the troopers lacked the requisite reasonable suspicion to warrant an investigative stop, that the stop therefore constituted an unlawful investigative stop, and that the trial court erred in denying his motion to suppress. The State responds by arguing that the trial court properly found that the vehicle in which Allen was riding "crossed over the right outside edge of the fog line." The State further points out that the trial court found "that the vehicle traveled for a considerable amount of distance across that line" and "that that would be an additional danger and would be unsafe conduct, as discussed in the statute." Thus, the State argues that the trial court's ruling on the motion to suppress was in accordance with both statutory and case law and that its decision denying the motion to suppress should be affirmed.

Standard of Review

{¶32} In general, "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7. "When considering a motion to suppress, the trial court

assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Codeluppi* at ¶ 7, quoting *Burnside* at ¶ 8.

### Fourth Amendment Principles

{¶33} To determine whether the trial court erred in denying the motion to suppress we must consider the reasonableness of the traffic stop. "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14 prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure. *Id.*

{¶34} This case involved an investigatory stop, which must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation. *See State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, ¶ 14; *State v. Fowler*, 4th Dist. Ross No.

17CA3599, 2018-Ohio-241, ¶ 16, citing *United States v. Williams*, 525 Fed.Appx. 330, 332 (6th Cir.2013), and *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).  "To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 18 (4th Dist.).  The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop.  *Id.*

{¶35} Moreover, a police officer may stop the driver of a vehicle after observing even a de minimis violation of traffic laws.  *See State v. Williams*, 4th Dist. Ross No. 14CA3436, 2014-Ohio-4897, ¶ 9, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus (1996).  "[A] traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer 'could' have performed the act complained of; pretext is irrelevant if the action complained of was permissible." *State v. Koczwara*, 7th Dist. Mahoning No. 13MA149, 2014-Ohio-1946, ¶ 22, citing *Erickson* at 7 and 11.

{¶36} Here, the trial court made a factual determination based upon the dashcam video and the trooper's testimony that the vehicle in which Allen was a passenger had travelled across the white fog line on two separate occasions. Because the trial court is the trier of fact and is in the best position to resolve factual questions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Burnside* at ¶ 8.

Legal Analysis

{¶37} We initially note that Allen not only contends that the record fails to support the trial court's finding that the vehicle at issue travelled over the white fog line twice, he also argues that the stop was pretextual and was actually part of a wider drug interdiction effort. However, that argument was not properly preserved for purposes of appeal. Moreover, the Supreme Court of Ohio has clearly stated as follows:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop[.]

*Dayton v. Erickson*, *supra*, at paragraph one of the syllabus.

{¶38} On appeal, Allen argues that the testimony of the state trooper during the suppression hearing "is directly controverted by the video tapes that were submitted as exhibits during the first suppression hearing." He argues that the

video demonstrates that "the right side tires of the vehicle never intersect the line" and that "at no time was the full tire over the line." Thus, Allen contends that "[g]iven that the tire was in contact with the line at all times, its clear that * * * there was no probable cause or reasonable articulable suspicion that a traffic infraction occurred * * *." The State contends that the trial court properly found that the tire of the vehicle crossed the white fog line by half a tire width and thus, that the stop was therefore valid.

{¶39} Here, the record before us indicates that the stop was initiated as a result of a traffic violation, in particular R.C. 4511.33, which requires drivers to drive their vehicles entirely within a single lane of traffic and to remain within the lane markings "as nearly as practicable." R.C. 4511.33 also provides in section (A)(1) that vehicles "shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Importantly, the Supreme Court of Ohio recently considered the "legal question of whether touching the solid white longitudinal line—the fog line—violates R.C. 4511.33(A)(1)." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 15. The Court ultimately determined that a police officer does not have reasonable articulable suspicion to execute a traffic stop when the officer observes a vehicle "driving on" or "touching" the fog line. *Id*. at ¶ 3. However, the Court also held that the plain language of R.C. 4511.33(A)(1), read in

conjunction with the definitions set forth in R.C. 4511.01, " 'discourages or prohibits' a driver from 'crossing [the fog line.]' " *Id.,* citing Manual of Uniform Traffic Control Devices ("MUTCD"), Section 3A.06(B) (Jan 13, 2012). The Court reasoned that because Turner "did not cross the single solid white longitudinal line –the fog line–and driving on it or touching it is not prohibited under R.C. 4511.33(A)(1), no violation occurred." *Turner* at ¶ 35. The Court did not elaborate further regarding to what extent a driver must cross the fog line for there to be a violation of R.C. 4511.33. That is essentially now the area of dispute in the present appeal, i.e., whether crossing the fog line by half a tire width constitutes a violation or whether the entire tire must cross over the line in order for there to be a violation.

{¶40} In its decision denying Allen's first motion to suppress, the trial court noted that Trooper Day testified that he observed the vehicle at issue travel across the white fog line two times. The trial court also noted that the dashcam video supported the trooper's testimony as to the fog line violations, stating that while the video was hard to see, it did not contradict the trooper's testimony. As set forth above, after the *Turner* decision was released, another suppression hearing was held focusing specifically on the fog line issue.

{¶41} At the second suppression hearing, Trooper Day testified that the vehicle at issue traveled across the white fog line twice, the first time for a distance

of about 50 to 75 feet, and the second time for a distance of about 50 feet. The

trooper explained that the first time the vehicle crossed over the fog line, the right

half of the tire was "over the line" and about a half a tire width was on the line.

The trooper further testified that the second time the vehicle crossed the fog line

there was "a half a tire width outside the right lane." After listening to additional

testimony and reviewing the dashcam video for a second time, the trial court stated

on the record as follows:

> I'm going to find that the evidence offered supports that this
> vehicle in question crossed on two occasions the right outside
> edge of that fog line by half a tire width, with half a tire width
> over that line, and half a tire width on or within that lane of travel.
> I'm going to find that that is a violation of the statute in question,
> and as such, the Trooper did have reasonable, articulable
> suspicion.
>
> I'm going to also find (inaudible) in particular as to the first of
> those lines – times that this vehicle is shown in that video, the
> video shows that car traveling for a considerable distance across
> that line. I'm going to find that that would also be an additional
> danger and would be unsafe conduct as discussed in that statute.
> The Trooper described it as 50 to 75 feet. I'm going to accept
> that, even though it appeared it was much longer distance from
> watching the video. Based on that, I am again going to deny the
> Defendant's Motions to Suppress in this matter.

{¶42} Thereafter, in its decision denying Allen's supplemental motion to

suppress, the trial court noted that the trooper observed the vehicle travel across the

white fog line two times and stated that the video "supports" and "bolsters" the

trooper's testimony. The trial court specifically stated in its order that it found the

trooper's testimony regarding the fog line to be credible and further stated that the video did not contradict the testimony. Thus, the trial court found that the initial stop was valid. After reviewing the video, we agree with the trial court's assessment. Although it was difficult for this Court to determine from the video the exact amount of tire width that crossed over the fog line, it was apparent that the vehicle had traveled across the line. Contrary to Allen's arguments, the video certainly does not directly contradict Trooper Day's testimony. Moreover, we cannot conclude that the trial court legally erred by applying the *Turner* holding to prohibit crossing over the fog line by half a tire width, as opposed to requiring that the entire tire cross over the line in order to find there was a violation of the statute at issue. To the contrary, we find the trial court reasonably applied the *Turner* holding to find that a violation of R.C. 4511.33(A)(1) occurred. Therefore, we cannot conclude, based upon the record before us, that the trial court's factual findings were against the manifest weight of the evidence in the record or that the trial court erred in denying Allen's motion to suppress.

{¶43} We further note before concluding our analysis under this assignment of error that Allen appears to "call[] into question" the "running of the drug dog around the vehicle." He also appears to suggest that there was a handler cue given to the dog by the trooper. However, it does not appear that these arguments were raised below and thus, they have not been properly preserved on appeal.

Moreover, as noted above, we are somewhat limited by the record before us. For example, the first motion to suppress that was filed by Allen did not contain an actual memorandum in support of the motion to suppress. The motion simply referenced that Allen was making the same arguments as raised in his codefendant's motion, which was before the trial court, but was not made part of Allen's trial court record and is not part of the record before us on appeal.

{¶44} We can glean from the record that Allen's first motion to suppress appears to have primarily challenged the duration of the search, but not the initial stop or the K9 sniff of the vehicle. It was not until the *Turner* decision was released that another motion to suppress was filed, challenging primarily the initial stop. Although Allen's counsel attempted to raise some additional substantive issues regarding the stop, detention and search at that time, they were disallowed by the trial court. Instead, the second suppression hearing was limited to the issue of the alleged fog line violation and whether the statute was in fact violated or not in light of the *Turner* decision.

{¶45} Thus, although we have reviewed the record to the extent possible, it does not appear that the arguments regarding the propriety of the K9 sniff were properly preserved for purposes of appeal. Moreover, " '[i]t is well settled that issues not raised in an original motion to suppress cannot be raised for the first time on appeal.' " *State v. Meadows*, 2022-Ohio-287, 184 N.E.3d 168, ¶ 21 (4th

Dist.), quoting *State v. Jones*, 4th Dist. Highland No. 04CA9, 2005-Ohio-768, 2005 WL 433433, ¶ 18.  *See also State v. Markins*, 4th Dist. Scioto No. 10CA3387, 2013-Ohio-602, ¶ 25; *State v. Daboni*, 4th Dist. Meigs Nos., 18CA3, 18CA4, 18CA5, 2018-Ohio-4155, ¶ 16.  Accordingly, having found no merit to Allen's second assignment of error, it is overruled.

{¶46} Having found no merit to either of Allen's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J., concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**